E-FILED
Monday, 11 April, 2005  11:26:22 AM
Clerk, U.S. District Court, ILCD

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT



FILED

APR 11 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

HARRY MICHAEL HIBBETTS,

     PETITIONER,

V.

UNITED STATES OF AMERICA,

     RESPONDENT.

_____/

CASE NO. 05-1053
CASE NO. 00-1207
CASE NO. 96-10024

PETITIONER'S MOTION FOR RECONSIDERATION

    Comes Now the Petitioner Harry Michael Hibbetts (hereinafter referred to as the Petitioner), a Pro Se litigant who moves this Honorable Court with the forgoing Motion for Reconsideration of this Courts' March 14, 2005 Order dimssing the successive §2255 Motion without prejudice.  As grounds thereof the Petitioner states as follows:

    The Petitioner's Petition was dismissed without prejudice on March 14, 2005 (case number 05-1441) stating that his Blakely/Booker claim was not retroactive, citing <u>Simpson v. United States</u>, 376 F.3d. 679 (7th. Cir. 2004).

-1-

Petitioner asserts that the Court has completely side stepped the fact that Petitiner's original §2255 (Exhibit A) filed July 12, 2001 was denied wrongfully under Apprendi, Jones, Mecham, Ferguson, Tren, Stirone and Ex Parte Bain. Were as the Petitioner should have been granted relief. It is the fault of the District Court in misinterpreting the meaning of statutory maximum under Apprendi and ignoring Petitioner's jurisdictional errors. See Exhibit B, Petitioner's denial of his original §2255.

Petitioner feels that he has been prejudiced from filing a second or sucessive §2255 on the same issues that he brought to the Court's attention in his original §2255 and that has now again come about in Blakely and Booker, when the Supreme Court had to revisit its meaning of Apprendi's statutory maximum.

Petitioner asserts that the statutory maximum under §841(b)(1)(c) is not 20 years as every District/Appellate court has ruled since Apprendi.

Petitioner asserts, the courts have been constructively amending the indictment once again by trying to apply §841(b)(1)(c) where no weight was stated in the indictment, such as Petitioner's indictment. See exhibit C.

Petitioner was sentenced to 140 month on Count I drug charge followed by five years supervised release and 120 months on Count 3 , firearms. 922(g) charge, followed by 3 years supervised release to run concurrently with

-2-

Count 1.   The other counts of the superseding indictment
were dismissed.

Petitioner asserts, his drug charge cannot stand.
Also, his firearms charge would be far less than 120 months
after being recalculated.

Petitioner asserts, statutory maximum is the applicable
base level range that has to be established from the evidence
presented to the grand jury.   This evidence of drug type
and weight must be stated in the indictment and proven
to the grand jury beyond a reasonable doubt.   The indictment
must allege a specific weight to give the court jurisdiction
to convict and sentence.   No one can change the indictment
but the grand jury.

Petitioner asks why he should suffer loss of remedy
(access to court) and left without remedy when his original
§2255 was wrongly denied.

Petitioner will now show first that Blakely/Booker
is retroactive on collateral review and also the fatal
jurisdictional error in his indictment, as well as actual
innocence on his drug charges.

Petitioner asserts in pre Booker cases a judge determined
sentence-enhancement facts by preponderance of evidence.
(A civil standard of proof).   Post Booker those facts
must be both determined by jury and proved beyond a reasonable
doubt.   Accordingly, pre-Booker, the fact finding process
was so "seriously deminishe[d]" accuracy as to produce

-3-

an "impermissibly large risk" of injustice. Summerlin,
159 L.Ed.2d. at 451.

The Booker rule remedied that risk and therefore,
is exempt form Teague v. Lane, 489 U.S. 288, 103 L.Ed.2d.
334, 109 S.Ct. 1060 (1989) retroactivity bar under the
water shed rule of criminal procedure exception. See,
e.g. In Re Winship, 397 U.S. 358, 25 L.Ed.2d. 368, 90 S.Ct.
1068 (1970); cf. Ring v. Arizona, 536 U.S. 584, discussed
in Summerlin.

Petitioner asserts Booker invalidated the Guidelines
both on the Sixth Amendment jury trial violation as well
as the Apporendi due process doctrine. Jointly those basis
compel retroactivity. See e.g. In Re Winship, 397 U.S.
358; Ring v. Arizona, 536 U.S. 584. See also United States
v. Hernandez, 137 F.Supp.2nd. 919 (W.D. Ohio 2001) rev'd
in United States v. Luciano, 311 F.3d. 146 (2nd. Cir. 2002)
and United States v. Murphy, 109 F.Supp. 1059, 1064 (D.
Minn. 2000) revd. in Murphy v. United States, 268 F.3d.
599 (8th. Cir. 2001). Therefore, Summerlin's reliance
on Destefano v. Woods, 392 U.S. 631, 20 L.Ed.2d. 1308,
88 S.Ct. 2093 (1968) (per curium) refusing to give retroactive
to Duncan v. Louisiana, 391 U.S. 145, 20 L.Ed.2d. 491,
88 S.Ct. 1444 (1968) (applying Sixth Amendment jury trial
guarantee to the states) to reject retroactivity is inconsequential
to Booker's retroactivity. In DeStefano, like Summerlin,
the fact finding standard on which retroactivity was claimed

was the same, only the fact finder differed.  Booker changed
those standards exactly as did In Re Winship.  (Requiring
juvenile charges be proved by proof beyond a reasonable
doubt instead of preponderance, reasoning the reasonable
doubt standard is a prime instrument for reducing the risk
of convictions resting on factual error.  The standard
provides concrete substance for the presumption of innocence--that
bedrock 'axiomatic and elementary' principle whose 'enforcement
lies at the foundations of the administration of our criminal
law'").  Booker's new rule of constitutional law rest on
both Apprendi's due process doctrine and IN Re Whinship's
Sixth Amendment right to jury trial with respective beyond
a reasonable doubt standard which compels retroactivity.

Petitioner asserts the Supreme Court in Tyler v. Cain,
533 U.S. 656, 150 L.Ed.2d. 632, 121 S.Ct. 2478 (2001) can
make new rules retroactive (1) by declaration, (2) by application
of the rule to a habeas case (id., 533 U.S. at 665, 150
L.Ed.2d. at 645), or (3) through multiple holdings which"
necessarily dictate retroactivity of the new rule[]" (id.
533 U.S. at 668-70, 150 L.Ed.2d. at 646-47 (O'Conner, J.,
Concurring).  Booker has made its new rule retroactive
in all three ways and more.

Petitioner asserts Booker specifically declared both
the Sixth Amendment holding and [its] remedial intepretation
of the Sentencing Act [retroactive] to all cases on direct
review", BREYER, J. Slip Opinion at 25.  Instead of limiting

-5-

only to cases on direct review. Once again compelling
retroactivity because Booker's Sixth Amendment new rule
simply reaffirm[ed] [its] holding in Apprendi: [that] [a]ny
fact (other than a prior conviction) which is necessary
to support a sentence exeeding the maximum authorized by
the fact established by a plea of guilty or a jury verdict
must be admitted by the defendnat or proved to a jury beyond
a reasonable doubt." Id. Stevens, J., Slip Opinion at
20. That rule is but a magnification of its In Re Winship
rule" that the constitution protects every criminal defendant
'against conviction except upon proof beyond a reasonable
doubt of every fact necessary to constitute the crime with
which he is charged.'" Booker, Stevens, J. Slip Opinion
at 5.

Petitioner asserts in Ivan v. City of New York, 407
U.S. 203, 205, 32 L.Ed.2d. 569, 661; 62 S.Ct. 1951 (1972)
(per curium) the Supreme Court declared In Re Winship must
"be given complete retroactive effect". Ivan V. was also
a direct appeal case like Booker. However, the Supreme
Court's declaration left no doubt its retroactivity declaration
mean retroactivity to all cases, final or otherwise. Proof
of it is in several habeas cases in which the Supreme Court
subsequently applied variations of its In Re Winship rule.
See e.g. Yates v. Eyatt, 500 U.S. 391, 114 L.Ed.2d. 432,
111 S.Ct. 1184 (1991) applying rule in Sandstorm v. Montana,
442 U.S. 510, 61 L.Ed.2d. 39, 99 S.Ct. 2450 (1979) that

-6-

jury instructions on malace or intent violated due process
by relieving the state's burden of proving every element
beyond a reasonable doubt as required by In Re Winship);
Francis v. Franklin, 471 U.S. 307, 85 L.Ed.2d. 344, 105
S.Ct. 1965 (1985).  Applying Sandstorm v. Montama, 442
U.S. 510, in burden shifting instruction in violation of
In Re Winship principle);  Jackson v. Virginia, 443 U.S.
307, 61 L.Ed.2d. 560, 99 S.Ct. 2781 (1979).  Applying In
Re Winship rule to insufficiency of evidence standards
of review in federal habeas corpus proceedings).

Petitioner asserts by so applying the In Re Winship
type rule to multiple habeas cases, the Supreme Court has
also applied its Booker constitutional rule through those
past cases. If Booker and In Re Winship are rules of the
same type, application of one to habeas proceeding is application
of the other thus making both retoractive under Tyler v.
Caine's application retroactive method.

Petitioner asserts the Supreme Court has made Booker
retoractive through its multiple holdings because it held
in "Case One [Ivan V. 407 U.S. at 205, 32 L.Ed.2d. at 661-62]
that [the In Re Winship type of rule applies retroactively
to cases on collateral review and [held] in case two [Booker]
that [its] rule is of that particular type, then it necessarily
follows that the [Booker] rule applies retroactive to cases
on collateral review".  Tyler v. Cain, (O'Connor, Conrurring).

Petitioner further asserts Booker is retroactive through

-7-

Guideline clarifying amendments which is well established.
See e.g. <u>United States v. Garcia-Cruz</u>, 40 F.3d. 986, 990
(9th. Cir. 1994) (Under the law of our Circuit, Amendments
to Sentencing Guidelines which are 'clarifying" as opposed
to 'substantive' may be given retroactive effect"). See
also <u>United States v. Stinson</u>, 30 F.3d. 121, 122 (11th.
Cir. 1994) (per curiam) (collecting cases). Booker made
no substantive charges to the Guidelines. It merely interpreted
them (Breyer, J. Slip Opinion, pg. 25) ("our remedial interpretation
of the Sentencing Act") advisory as " Congress would have
intended'" (id. pg. 2) had it known its mandatory provision
violated the Sixth Amendment right to jury trial.  See
also id., pg. 22 (hence we have examined the statute in
depth to determine Congress' likely intent in light of
today's holding") (emphasis original).

Petitioner asserts Booker's amendment merely clarified
Congress' intent in light of its Sixht Amendment holding.
Had Booker "superimpos[ed] its [Sixth Amendment] constitutional
requirement announced [therein]"" id. pg. 3) by "engraft[ing]
the Court's constitutional requirement on to the sentencing
statutes, [it] would [have substantively] destroy[ed] the
system[]" ed., pg. 9).  Such a substantive change would
have produced unintended identical punishment for different
degrees of similar crimes (id.) and vise-versa (id. pg.
10).  Thus destroying Congress' goal of sentence uniformity
(id).  Because the Booker Sentencing Reform Act amendements

did not change the Guidelines substantively but merely
interpreted them as advisory instead of mandatory, such
amendment is only clarifying amendment necessarily retroactive.

Petitioner asserts Booker's amendment to the sentencing
appellate process also changed nothing substantively again
it only clarified the standard review Congress would have
preferred in light of its Sixth Amendment holding. Retroactive
challenges in post conviction are applicable through Collins
v. Youngblood, 497 U.S. 37, 111 L.Ed.2d. 30, 110 S.Ct.
2715 (1990).

Petitioner asserts, by remedially servering and excising
parts of the Federal Sentencing Act of 1984 akin to legislating
(see e.g. Freehorn v. Smith, 69 U.S. 160, 168, 17 L.Ed.
992, 175, 2 Wall 160 (1865), the Supreme Court in Booker
modified the Federal Sentencing Guidelines nunc pro tunc
to their November 1, 1987 effective date.

We answer the question of remedy by finding the provision
of the federal sentencing statute that makes the Guidelines
mandatory, 18 U.S.C.A. §3553(b)(1) (Supp. 2004) incompatible
with today's constitutional holding. We conclude that
this provision must be severed and excised, as must one
other statutory section, §3742(e) (main ed. and Supp. 2004),
which depends upon the Guideline's mandatory nature. So
modified, the Federal Sentencing Act, see Sentencing Reform
Act of 1984, as amended, 18 U.S.C. §3551 et seq. 28 U.S.C.
§991 et seq. makes the Guidelines effectively advisory.

-9-

Booker, Breyer, J, Slip opinion, pg, 2.

Petitioner asserts, Congress power to make or amend remedial
Statutes retroactively absent Ex post Facto problems is unquestionable.
See Freeborn V. Smith, 69 U.S. at 168, 17 LEd at 923 "(We do not question
the validity of retrospective statutes that are purely remedial") see
also Frisbie V Whitney, 76 U.S.187, 19 LEd 668, 9 Wall 187(1869).
Retroactivity thereby is simply a matter of intent. See e.g. Rivers V.
Roodway Express, 511 U.S.298,311, 128 LEd 2d 274, 278,114 S.Ct. 1510
(1994). ("The question is weather Congress has manifested such an intent")
Because in Booker it is the Supreme Court which remedially modified the
Sentencing reform Act of 1984 as '''Congress would have intended'''
BREYER,J.slip opinion, pg.25, had it known in 1984 its mandatory senten-
cing Guidelines violated the Sixth Amindment (id,pg 22) ("We have examined
the statute in debth to determine Congress likely intent in light of
today's holding")(emphasis original), Booker's indisputable intent to
modify the Guidelines nunc protunc is dispositive.

Petitioner asserts, even if the Supreme Court did not assume
Congress role in modifying the Sentencing Reform Act, in construing and
interpreting it as "Congress would have intended" (BREYER,J.Slip opinion
pg.25) had it known its mandatory Sentencing Guidelines violated the Sixth
Amendment (id, pg.22) The Supreme Court has made Booker retroactive.

Petitioner asserts, like Booker, the Supreme Court in Patterson
V. Mclean Credit Union, 491U.S.164, 105 LEd 2d 132, 109 S.Ct.2363(1989)
interpreted a 123-year old statute differently than the appeallate courts
had done since its enctment.As to Pattersons retroactivity,the court said:

10

A judicial construction of a statute is an authoritative statement of the statute meant before as well as after the decision of the case giving rise to the construction [] Thus Patterson provides the authoritative interpretation of the phrase "make and enforce contracts" in the Civil Rights Act pf 1866 before the [Conressional] 1991 Amendment [overruling Patterson] went into effect on November 21, 1991 [Patterson's] interpretation povides the base line for our conclusion that the 1991 amendment would be "retoactive if applied to cases arising before that date.

Petitioner asserts that unlike Rivers V. Roadway Express, 511 U.S.298, 313, 128 LEd 2d 274, 289 which rejected retroactivity of the relevant Congressional Amendment because it was not so intended by Congress. The Supreme Court judicial construction or interpretation of the Sentencing Reform Act of 1984 is inescapable because " the court has no authority to depart from the Congressional command setting the [November 1, 1987] effective date of[the] law[] it has inacted [ ]" Rivers, 511 U.S. at 313, n 12, 128 LEd 2d 289,n 12

Petitioner asserts he will now show the jurisdiction fatal errors which controls the courts jurisdiction and reach. Indicment Exhibit C.

Petitioner asserts his sentence violates Apprendi and is an jurisdictional error, and therefore the error may be raised on colla-teral review without being subject to procedural default or to the

11

nonretroactivity analysis of Teague V Lane 489 U.S. 288,109 S ct, 1060, 103 LEd 2d 334 (1989)

Petitioner asserts the District Court denied his Apprendi claim saying they could have given Pititioner 20 years under 841 (b)(1)(c) and that he only recieved 140 months. See Exhibit B. This is not true due to the aggravating triggers of drug weights that must be alleged in all 841 sections 841(1)-(A), 841 (b)(1)(**B**) ,841(b)(1)(c). The court also side stepped Petitioner's jurisdictional claims

Petitioner asserts that when a habeas petitioner asserts

a claim for collateral relief based on jurisdictional errors to which no contemporaneous objection was made, the Petitioner need show neither cause nor prejudice. Harris V. U.S. 149 F3d 1304 (11cir 1998)

Petitioner asserts that the District court switched to what they thought was a catch all of 841 (b).(1).(c) because they failed to included a drug weight that would trigger 841 (b)(1)(B) This alone constructively amends the indicment.(Only a grand jury can amend the indictment)

Petitioner asserts on the understanding of Apprendi and Promise 255 F3d 167 Promise concluded that where specific drug quantities were not both indicted and proven to the Jury beyond a reasonable doubt, a defendant could only be sentence under section 841 (b)(1)(c) to a maximum of 20 years.

Petitioner asserts the promise majority further believed that

12

"Apprendi dictates that in order to authorize the imposition
of a sentence exceeding the maximum allowable without a jury
finding of a specific threshold drug quantity must be treated
as a element of an aggravated drug trafficing offence. 255 F3d
at 156,

          Petitioner asserts lets now look at the Sentencing
Guidelines, U.S.S.G. § 2 D 1.1 the so called threshold quanity
under Section 841(b)(1)(c) is not 5 grams cocaine base as under
841(b)(1)(B), but rather 2.5 grams. The Guidelines assign an
offence level of 12 to a defendant found to possess less than 2.5
grams of cocaine base. Assuming away criminal history, which does
not substantively alter the analysis such a defendant is exposed
to a sentence of at most 16 months not 20 years. In order to
impose a sentence greater than 16 months, a finding that the defen-
dant is responsible for 2.5 grams or more must be made, raising the
defendant's offence level to 14. The reasoning of Promise requires
that this element of a quanity of 2.5 grams or more be indicted
and found by the jury beyond a reasonable doubt. Petitioner is focu-
sing on cocaine base (crack) for example, Promise's reasoning riqui-
res the seperation of section 841(b)(1)(c) into two distinct offences
one, the manifacture or distribution of 2.5 grams or more of controled
substance; the other, the manifacture or distribution of less than
2.5 grams- just as that reasoning required that section 841 be sep-
arated into multiple offences. Accordingly, Promise without any

13

additonal analysis whatever, requires that petitioner be sentenced
to no more than 16 months imprisonment.

Petitioner asserts looking further into Promise even  this
minimum sentence cannot stand, because drug quanity information is
an element of each of these new, Promise-created section 841 (b)(1)(c)
offences not simply the more culpable of the two. This follows from
an analysis of the text of the statute, and, in this case, the Guid-
elines. See e.g.Staples V. U.S. 511, U.S. 600, 604 (1994)(nothing
that the determination of the elements of an offence is a matter of
Statutory construction). A violation of the "aggravated" section 841
(b)(1)(c) offence  (to borrow Promise's terminology) requires the
defendant to be responsible for 2.5 grams or more of cocaine base(crack)
See USSG.§ 2D1.1. This is the threshold drug quanity that under Promise
must be treated as an element.

Pititioner asserts a violation of the un-"aggravated" section
841 (b)(1)(c) offence, however, requires that the defendant be respo-
nsible for at least 2.5 grams have committed the separate aggravated
 section 841 (b)(1)(c) offence but not the lower offence. This follows
from the fact that the Guidelines requires a quanity less than 2.5
grams in order for the lesser sentence to be applicable, Drug quanity
information, then is an element of both section 841(b)(1)(c) offences,
not merely the aggravated offence, because such information goes to
very definition of the offences. of course, this means that drug
quanity information is an element of all cocaine base (crack) related

14

841 offences.

Petitioner asserts, to be sure, Promise was concerned with statutory maximums (though certainly not in the traditional sense), but the administrative nature of the Guidelines changes nothing. The Guidelines have the force of law. And there is no constitutional difference between the graduations of offences that exist within section 841(b)(1)(c) by operation of the Guidelines and the graduations of offences the Promise majority created within section 841 as a whole. The sixth Amendment is no less offended by a judicially imposed sentence in excess of that authorized by Guidelines (based upon a judicial finding of quanity), than by a sentence in excess of that authorized by statute (based upon the same judicial finding of quanity). The defendant has been equally deprived of his right to trial by a jury in both cicumstances.

Petitioner asserts that section 841 conviction not just the sentence, must be reversed when drug quanity is not charged in the indictment rest on Promise's conclusion that sections 841(b)(1)(A)(B) (C) and (D) set forth seperate substantive crimes, the elements of each of which are to be found in the text of the statute. See.eg. Staples, 511 U.S. at 604. Section 841 (b)(1)(c)  provides, in relevant part, that "[i]n  the case of a controlled substance in schedule 1or2 except as provided in subparagraphs(A)(B) and(D) Such person shall be sentenced to a term of imprisonment of not more than 20 years "(Emphasis added) In order to ascertain weather section 841(b)(1)(c) has been violated, it must be determined (again,using cocaine base(crack)

15

as an example) that the quanity in question is less than 5 grams-
i.e, that subsection (B) has not been violated. (of course, the
defendant must be responsible for less than the 841(b)(1)(A)
threshold quanity of 50 grams but if he is responsible for less
than section 841(b)(1)(B) quanity of 5 grams, than he necessarily
is responsible for less than 50 grams). It follows from the text
of section 841 (b)(1)(c) that the fact that the quanity at issue
is less than 5 grams is an element of the section 841 (b)(1)(c)
offence; this fact is part of the definition of the offence. For
drugs mentioned in sections 841(b)(1)(A) and(B) then, to state a
violation of section 841(b)(1)(c), the indicment must allege that
the defendant is responsible for some positive quanity less than the
section 841 (b)(1)(B) threshold quanity for that drug.

        Petitioner asserts in the present case the indicment alleges
only a mixture of a substance containing cocaine and cocaine base
(crack) a schedule 2 controled substance(Exhibit c) it is impossible
to evaluate wether the 841 (b)(1)(c) exception applies or not:
As the District Court said, it applied in there denial of Pititioner's
§2255 (Exhibit B) "A subtance containing" could just as easily
refer to 50 grams or more to some quanity between 5 and 50 grams
(triggering an aggravated section 841 (b)(1)(A) or B offence
respectively) as it could refer to one gram (falling squarely with in
section 841(b)(1)(c). It follows, therefore, that Petitioner's indic-
ment does not allege the violation of any  Federal law and his con-
viction based upon that indictment is unconstitutional.

16

Petitioner asserts, reading Apprendi with Jones V U.S. 526 U.S. 227, 119 S.Ct. 1215, 143 LEd 2d 311 (1999) that drug quanity is a offence element of crimes punihable by §841 (b)(1)(A), B, C that must be alleged in the indictment as a prerequisite to the imposition of sentences under those provisions. See U.S. V Nance 236 F3d 820,826 (7th cir 2000) (5 grams or more) quanity in indicment U.S. V Doggett 230 F 3d 160, 164-65 (5th cir 200) the quanity must be stated in the indicment.

Petitioner asserts, this conclusion derives from both the language and holding of Apprendi:

In Apprendi, the Supreme Court held that the sixth and fourteenth Amendments "indisputably entitle a criminal defendant to a jury determination the [he] is quilty of every element of the crime with which he is charged, beyound a reasonable doubt". See Apprendi (quoting U.S.V Gaudin 515 U.S. 506 510 115 S ct. 2310 132 LEd 2d 444 (1995) The Court characterized any "fact that increases the penalty for a crime" as "the functional equivalent of an element of greater offence than the one covered by the jury's guilty verdict" indeed as noted above, as one that "fits squarely within the usual definition of an element of the offence" Apprendi 530 U.S. at 494 n 19. As Justice Thomas wrote in his concurring opinion, joined by Justice Scalia, "[o]ne need only look to the kind, degree, or range of punishment to which the prosecution is by law entitled for a given set of facts. Each fact necessary for that entitlement is an element Id at 501, 120 S.ct. 2348 (Thomas,J,concurring).

17

Drug quanity in 21 USC 841 is precisely such a fact that is, a
fact that legally entitles the prosecution to increased ranges
of punishment under §841 (b)(1)(A),B,C. Accordingly. If a sentence
under §841 (b)(1)(A),B or C. is to be imposed, the necessary elements
of the crimes charged therein, including the threshold drug amount
prerequisite to the application of these subsections of the statute,
must be "charged in the indicment and proven to a jury beyond a
reasonable doubt"... U.S V. Rogers 228 F 3d 1318,1327  See also U.S
V. Cotton 261 F 3d 397(4th cir 2000)

        Petitioner asserts, the court may suggest, an Apprendi
error in the indicment is susceptable to harmless error review if it
has been preserved, and plain error review if it has not:   and
similarly, it may maintain that the error can be procedurally defaulted
or Teague barred on collateral review. The problem with this view is
that it fails to account for the court's responsability in every
criminal case, to ascertain precisely the bounds of its own jurisdiction
as delincated by the offences charged in the indicment or information.
If drug quanity constitutes an element of the offences in §841 (b)(1)(A)
(B)(C) then failure to plead quanity in the indictment, must under
all existing precedent, constitute jurisdictional error that requires
any sentence to be reversed.

        Petitioner asserts,  Failure to plead Drug quanity in the
indicment is a Fatal jurisdictional Defect to Any Sentence.
The court's jurisdiction to impose A sentence is limited to the offence
charged in the indicment.

18

Petitioner asserts, when an indicment is not brought
by the grand jury or does not contains all the essential elements
of the crime charged and the necessary factual bases therefore,
there is error in the subsequent criminal proceedings. When
challanged a conviction or sentence based on charges not initialy
brought by the grand jury; must be per se reversed because, unlike
most ordinary trial errors "an indictment found by a grand jury[i]s
indispensable to the power of the court to try [the defendant]
for the crime with which he was charged". See e.g. Stirone V U.S.
361 U.S. 212, 217 (1960) The Bain case [Ex Parte Bain, 121 U.S. 1
(1987) which has never been desaproved, stands for the rule that
a court cannot permit a defendant to be tried on charges that are
not made in the indicment against him). The power or lack therefore
to try defendants on specific charges made in an indicment is the
essence of the court's criminal jurisdiction.

Petitioner asserts, an indicment that could just as easily
be read to charge any one of atleast three seperate and distinct
offences cannot be consdered constitutionally adequate because it
does not serve to inform the defendant of the "nature and cause of
the accusation" as required by the sixth Amendment. See e.g.
Russel V U.S., 369 U.S. 749, 762 (1962) Nor, for that matter, could
it even serve to protect the defendant from being twice tried for
the same offence.

19

Petitioner asserts, the reasoning of Promise leads inescapably to the conclusion that, at least for drugs explicitly mentioned in sections 841 (b)(1)(A),(B),(C). some definite statement regarding drug quanity is a element of all such section 841 offences, not merely the so called "aggravated" offences. Under Promise, at least the appropriate drug quanity ranges(sufficent to establish what offence the indictment alleges) must always be charged in the indictment and proven to the jury beyond a reasonable doubt. It is not as the Seventh Circuit recently put it, that drug "quanity is not an element of 841 offence" in the strong sense" whatever that means. See U.S.Vs Bjorkman, 270 F3d 482,492 (7th cir 2001) (emphasis added) It is that drug quanity information is an element of these offences in the only sense currently know to the law, and there-fore must be charged in the indictment and proven before the jury beyond a reasonable doubt.

Petitioner asserts,here the error in his indictment he has identified above taints the conviction and not merely the sentance. Under the reasoning of Promise, it bears repeating Petitioner's indictment failed to charge any crime under Federal law. Although one court has held on the authority of the Supreme court's decision in Johnson V U.S. 520 U.S. 461 (1997), and Neder V U.S. 527 U.S. 1 (1999) That such an ommission of a critical element from an indictment does not invalidate the conviction, See Bjorkman 270 F3d 490

(holding that" a conviction may be affirmed on plain error analysis
if the charge omits an element and the defendants do not object
before or at trial, no court that actually analyzed those cases could
fail to recognize that at issue in both were ommissions from jury
instructions, not ommissions from indictments. It would be judicial
 treachery to " elect to ignore" the difference between the ommissions
from jury instructions at issue in Johnson and Neder and the ommissions
from indictments at issue here in petitioner's case. Because the present
indictment omits an essential element of the offence charged (and the
elements alleged do not other wise constitute an offence). Petitioner's
conviction for violation of 841 simply cannot stand. See J.Archbold.
Pleading and Evidence in Criminal cases 44(11th ed 1849)("[E]very
fact or circumstance which is a necssary ingredient in the offence
must be set forth in the indictment" so that there may be no doubt as
to the judgement which should be given, if the defendant be convicted"):
I T Starke, Criminal Pleading 68(2d ed 1822)(the indictment must state"
the crimnal nature and degree of the offence, which are conclusions
of the law from the facts: and also the particular facts and circums-
tances which render the defendant guilty of that offence")

        Petitioner asserts, the remedy by the Supreme Court for a
sentence imposed beyond the trial courts jurisdiction is a remand for
resentencing within the proper confines of its jurisdiction "[T]he
imposition of a sentence in excess of what the law permits

21

does not render the legal or authorized section of the sentence
void, but only leaves such portion of the sentence as may be in
excess open to attack... [T]he sound rule is that a sentence is
legal so far as it is within the provision of the law..and only
void as to the excess... "U.S. V Pridgeon 153 U.S. 48,64 14 S. ct
746, 38LEd 631(1894)

            Petitioner asserts, the court must take account of this
jurisdictional error that occurs when a court acts in excess of its
authority. Indeed, even guilty pleas cannot excuse such jurisdictio-
nal errors, for the court simply does not have authority to accept
a plea to an offence greater than that charged in the indictment.

            Petitioner asserts, that the objection that the indictment
fails to charge an offence  is not waived by his guilty plea which
was put before the court in his original §2255 (Exhibit A) the
violation of [the defendant's] right to be free of prosecution for a
nonoffence would bar his conviction even if his "factual guilt" had
been established validly, the entry of a guilty plea does not act as
a waiver of jurisdictional defects such as the indictment's failure
to charge an offence. see U.S.V Meacham, 626 F2d 503, 510 5th cir
(1980)  See In Bonner M Prchard, 661 F2d 1206,1209 (11th cir(1981)
(en banc), the Eleventh Circut adopted as binding precedent all Fifth
Circut decisions handed down prior to the close of buisness on
September 30, 1981.

22

Petitioner asserts, for the seventh Circut to categorize
an error as they tried to do in U.S. V Bjorkman supra  ignores the
initial question that must be asked when an: essential element has
not been alleged in the indictment: What is the extent of the court's
power to act or, put in the traditional way the extent of its jurisd-
iction. See also U.S. V Moss 252 F3d 993, 1004(8th cir 2001)
(Arnold J.dissenting) ("As far as I am aware, no case has ever held
that the ommission of an element of a crime from an indictment can
be harmless error")

Petitioner asserts, in contrast, the grand jury indictment
confers initial jurisdiction upon the court and defines its scope.
See e.g. Gaither V U.S. 413 F2d 1061(D.C. cll  1969). Thus, an error
by which the scope of the indictment is expanded cannot be analyzed
in the context of the trial, for such errors precede any consideration
of trial process errors and challange either the courts initial
jurisdiction or its reach.

Petitioner asserts, as illustrated by Stirone, not every
error in jury instructions is susceptible to harmless error review.
Unlike the non jurisdictional jury instruction error in Neder- to
which failure to submit the issue of materiality to the jury when it
was implict in the jury instruction as a whole- the jury instructions
given in Stirone varied from the indictment to such an extent that
the substantial right to be tried only on charges presented in the

23

indictment and returned by a grand Jury was abrogated. The defendant's
sentence was therefore vacated because the court had exceeded its
jurisdiction. See also: U.S. V Tran 234, F3d 798, 809 (2nd cir 2000)
("If the district court acts beyond its jurisdiction by trying,
accepting aguilty plea from, convicting, or Sentencing a defendant
for an offence not charged in the indictment, this Court must notice
such error and act accordingly to correct it, regardless of weather
the defendant has raised the issue)

        Petitioner asserts, by holding that a sentence under §841
(b)(1)(A), or(C) could be up held even where the indictment failed
to allege drug quanity, the court would functionally exempt the cri-
minal indictment or information from even the minimal requirements
 that are required in a civil  complaint. See Rule 8(a) of the Federal
Rules of Civil Procedure also Conley V Gbson 355 U.S. 41,47,78, S. ct
99 2 LEd 80 (1957)

        Petitioner asserts, the conclusion that the failure to
allege an element in the indictment is not susceptible to harmless
error review flows from a recognition of the pivotal role played by
the grand jury in the process of a criminal case. Under the Fifth
Amendment, the Constitution gives the gran jury complete discretion
to provide the parameters of a criminal proceeding, vesting it with
the power to indict based on the evidence presented to it and the abs-
olute choice not to indict, not withstanding any evidence presented

24

In the hands of the grand jury lies the power to charge a greater offence or a lesser offence; numerous counts or a single count; and perhaps most significant of all, a capital offence or a noncapital offence all on the basis of the same facts. Moreover, " [t]he grand jury is not bound to indict in every case where a conviction can be obtained." Thus, even if a grand jury's determination of probable cause is confirmed in hindsight by a conviction on the indicted offence, that confirmation in no way suggest that the discrimination did not impermissibly infect the  framing if the indictment and, consequently, the nature or very existence of the proceedings to come. See Vasquez V Hillery 474 U.S. 254,263, 106 S.Ct, 617,88 LEd 2d 598 (1986) quoting U.S.V Ciambrone, 601 F2d 616,629 (2nd cir 1979) (Friendly,J, dissenting).  Thus even when there is overwhelming evidence of drug amounts to support conviction and sentence under §841(b)(1)(A),(B),or(C). The grand jury has the right to refuse to charge the defendant with those amounts. what ever decision is made by the grand jury for what ever reason, it cannot,be reversed by a later petit jury, or worse, by the decision of the sentencing Judge.

Petitioner asserts,  the content of the charge, as well as the decision to charge at all, is entirely up to the grand jury. Subject to its popular veto, as it were. The grand jury's decision not to indict at all or not to charge the facts alleged by the prose- cutorial officials, is not subject to review by any other body.

Gaither V U.S 413 F2d 1061, 1066 (D.C. Cir 1969)(internal citations
omitted). See also Russel, 369 U.S. at 770, 82 S.Ct. 1038, 8Led 2d
240 (1962)(harmless error analysis would allow a defendant to 'be
convicted on the basis of facts not found by, and perhaps not even
presented to the grand jury which indicted him")

    Moreover, just as the grand jury alone has the power to
return an indictment, any amendments to the indictment must be made
by the grand jury as well. See Stirone Supra also Bain Supra. If in
subsequent proceedings "the charging terms of the indictment are
altered, either literally or in effect, by prosecutor or court after
the grand jury has last passed upon them " U.S. V Bursten, 453 F2d
6o5, 607 (5th cir 1971). The alteration is deemed a "constructive"
or "effective" amendment. Id. such substantial   "broaden[ing]"
See Stirone supra, constitute per se reversible error, because it
violates the defendant's constitutional right to be tried solely
within the parameters of the charges returned by the grand jury.
See Bursten supra.

    Petitioner asserts, until the Supreme Court holds that
Stirone errors are harmless its statement it made in Chapman V.
California 386 U.S. 18, 87, S. Ct. 824,17 LEd 2d 705(1967)
"That some Constitutional errors could be deemen harmless" has no
effect what so ever on the precedential force of its holding in Stirone.

26

Put differently, Chapman did not give the appellate Courts a license to survey the landscape of constitutional errors and recategorize them as they wish.

Petitioner asserts, in U.S. V Peel 837 F2d 975, 979 (11th cir 1998) the court reiterated that a "constructive amendment of a grand jury indictment is reversible error per se, See also U.S. V Salines 601 F2d 1279, 1290. (5th cir 1979) "[A] constructive amendment of an indictment is considered to be reversible error per se if there has been a modification at trial in the elements of the crime charged."

Petitioner asserts, when a defendant is sentenced without a drug weight in his indictment and by such a sentence, the court in place of the grand jury, supplies the missing allegation in the indictment, and in place of the petit jury, "finds" it as a "fact". This "fact" is "legaly essential to the punishment to be inflicted" thereby increasing the penalty under §841(b)(1)(A)(B)or(C) Thus by such a sentence the court is constructively amending the indictment in just a substantial a manner as that prohibited in Stirone and thus as in Stirone, the error is per se reversible. Because the court's sentence exceeds the jurisdiction established by the indictment, the erroneous sentence is not suceptible to harmless or plain error review on direct review. When a drug quanity is not alleged in the indictment, such a sentence is invalid because it fails to charge a Federal crime.

27

Petitioner asserts, the prosecution can not withold
information from the grand jury proceeding, leaving the drug weight
out of the indictment and then add whatever weight, amount he so
desires later using the prepoderence of evidence standard. When
this is done the indictment fails to charge a §841 offence at all,
and the prosecution is circumventing(constructively amending) the
indictment which can only be done by the grand jury. What ever charge
the grand jury brings, by the evidence presented to it by the prosecu-
tion, controls the scope(reach) of the court's jurisdiction and
cannot be changed by any other body.

Petitioner asserts, that is exactly what the court has
allowed the prosecution to do in this instant case. Therefore, the
court has exceeded its parmeters of jurisdiction regardless of
petitioner's corerced guilty plea. Therefore, petitioner's sentence
and conviction on count 1 drug charge cannot stand and must be per se
reversed. and is not subject to plain or harmless error review.
Because the court lacked jurisdiction to convict and sentence petitioner
for a crime not charged in the indictment from the grand jury.

Petitioner asserts, additional proof that his indicment
is defective is the fact that after Apprendi, a memorandum from
Christopher A. Wray, Assistant Attorney General, U.S. Department of
Justice, Criminal Division was sent to All Federal Prosecutors with
instructions to be sure to include drug type and quanity in all

28

indictments for offences under 21 USC §841. See Booker, Stevens,
J. desenting  Cite 543-2005 pg.7

Petitioner  asserts, he has shown the following: Retro-
activity, Ineffective assistance of consel, that he did not have
a full and fair hearing on his prior application of §2255, fatal
jurisdictional defective indictment, and a colorable showing of
factual innocence.

Petitioner asserts, under the ends of justice, the
federal courts are required to entertain his sucessive petition.See
Sanders V U.S. 373, U.S. 1,10 LEd 2d 148, 83 S.Ct. 1086(1963)
Kuhlmann V Wilson 477 U.S. 439 91 LEd 2d 364 106 S.Ct.2616 (1986)
Byrd V Delo 917 F2d 1037(8th 1990)  Williams V Lockhart 862 F2d 155
(8th cir 1988) Mccoy V Norris 958 F.Supp 420(E.D.Ark, 1996) also
Witt V wainwright 755 F2d 1396, 1397(11th cir1985)

Petitioner asserts, for all the reasons above and in the
interest of justice that the court will grant his motion to leave
to file second and successive §2255.

Respectfully Submitted: 4-6-05

Harry Michael Hibbetts

29

## CERTIFICATE OF SERVICE

I Harry Michael Hibbetts, do hereby certify that on this 6th. day of April of the year 2005 I have served a true and correct copy of the foregoing, pleading, by United States mail, upon K. Tate Chambers, Assistant United States Attorney at one Technology-Plaza suite 400, Peoria, Illinois 61602; and to the Clerk, of the Court, Mr. John M. Waters, at the United States District Court for the Central District of Illinois, 100 N.E. Monroe Street, Peoria, Illinois 61602.

Harry Michael Hibbetts
Reg. No. 10955-026
Federal Satellite Low
2650 Highway 301 South
Jesup, Georgia 31599

*A*

FILE A

UNITED STATES DISTRICT COURT          JUL 1 2
CENTRAL DISTRICT OF ILLINOIS
AT PEORIA                    JOHN M. WAT
                                      U.S. DISTRIC
                                      CENTRAL DISTRI_____

HARRY MICHAEL HIBBETTS          )
              Petitioner,       )
                                )
vs.                             )    CASE NO. 00-1207
                                )
UNITED STATES OF AMERICA        )
              Respondent.       )

_____

### PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE
### TO PETITIONER'S §2255 MOTION TO VACATE,
### SET ASIDE, OR CORRECT SENTENCE

_____

NOW COMES, Petitioner, Harry Michael Hibbett, pro se herein, hereafter referred to as petitioner, respectfully praying that this Honorable District Court would move favorably to grant petitioner this Motion to Vacate, Set aside, or Correct this sentence, imposed upon him, pursuant to 28 U.S.C. §2255.

Petitioner offers the following to writ:

1.    Petitioner has acted as his own counsel, in propria persona, through the filing of his initial §2255, with very limited knowledge or experience of the law.

2.    Petitioner has discovered new and recent case law with which to support his reply to government's response to deny his §2255 Motion to Vacate, Set aside, or Correct Sentence.

3.    Petitioner has been convicted and sentenced unlawfully and in violation of his constitutional rights, and now provides substancial laws to support initial §2255 Motion to Vacate, Set aside, or Correct Sentence.

### ARGUMENT

28 U.S.C.A. §2255 requires a prisoner's sentencing court to release him or her if the prisoner's sentence was imposed in



1:05-cv-01053-MMM # 4 Page 32 of 53

violation of the constitution or laws of the United States, if the court was without jurisdiction to impose the sentence, if the sentence exceeded the maximum authorized by law, or if the sentence is otherwise subject to collateral attack. The statute provides that if the court finds for the prisoner, it may resentence him or her or set the conviction aside, as is appropriate.

### PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel raise a cognizable constitutional issue that can serve as the basis of a motion under § 2255. See **U.S. v GIARDINO**, 797 F.2d 30, 31 (1st Cir. 1986). The Sixth Amendment to the United States Constitution provides that in criminal prosecutions the accused shall have the right to the assistance of counsel for his or her defense. The United States Supreme Court has held that this right includes the right to effective assistance of counsel. **McMANN v RICHARDSON**, 397 U.S. 759, 771 n.14, 90 S. CT. 1441, 25 L.ed 2d 763 (1970). Pursuant to this constitutional mandate, a defendant is entitled to reasonably competent assistance of counsel from pre-plea investigation and preparation through advocacy at sentencing. **U.S. v GARCIA**, 698 F.2d 31, 33-34 (1st Cir. 1983).

The United States Supreme Court has held that in order for a prisoner to show that counsel's assistance was so ineffective at the sentencing stage to warrant vacating or correcting a sentence under 28 U.S.C.A. § 2255, the prisoner must show;

1. That his counsel's act or omission made counsel's overall performance fall below an objective standard of reason.

2. That there is a reasonable probability that, but for counsel's errors, the prisoner would not have pleaded guilty.

(2)

STRICTLAND v WASHINGTON, 466 U.S. 668, 104 S. CT. 2052, 2064, 80 L.ed 2d 674 (1984); U.S. v PELLERITO, 878 F.2d 1535, 1538 (1st Cir. 1989; GIARDINO, 797 F.2d at 31; see HILL v LOCKHART, 474 U.S. 52, 58 (1985). Under the first prong of the above test, the prisoner must show that in light of all circumstances present at the time of sentencing, counsel's acts or omissions "were outside the range of professionally competent assistance." TEJEDA v DUBOIS, 142 F.3d 18, 22 (1st Cir. 1998). Under the second prong, the prisoner must show a reasonable probability that, " armed with the correct informatin, the outcome would have been different." U.S. v VANCOL, 916 F. SUPP. 372, 377 (D. Del. 1996). In the present case, the petitioner's counsel rendered ineffective assistance at the petitioner's sentencing on the 841 (a)(1) charge because he did fail to contest that the District Court did not have jurisdiction to sentence the petitioner by and through a guilty plea, for and amount of drugs not charged in the indictment, but were calculated into the petitioner's drug amount incorrectly, and from the uncollaborated testimony of one witness.

## STATEMENT OF THE CASE

On April 26, 1996, Petitioner was named by a federal grand jury sitting in the Central District of Illinois, in a one count indictment, charging him with possession of cocaine base (crack) with the intent to distribute, in violation of 21 U.S.C. §841 (a)(1) with a superceding indictment being returned on Jan 21, 1998, charging Petitioner with various drug and firearm offenses.

On February 6, 1998, he entered a plea of guilty to counts I and III of the superceding indictment, charging him with one count possession of cocaine base (crack) with intent to distribute in

(3)

violation of 21 U.S.C. §841 (a) (1), and possession of firearms by
a felon in violation of 18 U.S.C. §922 (g).

On July 1998, he appeared before United States District Judge
Michael M. Mihm for sentencing. He was sentenced to 140 months
imprisonment to be followed by 5 years supervised release on count I
the possession with intent to distribute charge. He was sentenced
to 120 months imprisonment to be followed by 3 years supervised
release on count III, the firearms charge. The sentences for both
counts were imposed to be served concurrently. He received a $200
special assessment and no fine. His conviction was affirmed in
**U.S. v HIBBETTS, 172 F.3d 54 (7th Cir. 1999).**

On June 12, 2000, petitioner filed a §2255 petition. In this
petition, he alleged:

1.    That he received ineffective assistance of counsel.

2.    That the indictment was constitutionally defective
because it failed to allege the drug amount.

Petitioner's claims remain with standing, however with slight
re-direction, so as to refrain from burdening the Honorable Court
with new challenges through this reply brief.

### CLAIM I.

Petitioner's counsel has in fact been ineffective, in manners
unknown to the petitioner during the time of the negotiated plea
and sentencing.

### CLAIM II.

Apprendi does in fact apply to petitioner, but not as it was
previously argued by petitioner's counsel, or as attacked by the
petitioner through his initial §2255 Motion.

### CLAIM III.

Counsel has been ineffective in that he made no argument to support the facts that petitioner made "personal use" of cocaine base (crack), cocaine, and marijuana.

### CLAIM IV.

Counsel failed to contest defective indictment with vigor, and ample supportive case laws.

### CLAIM V.

Counsel failed to raise the issue that the sentence, which was to be imposed as concurrent, was in fact non-concurrent.

### ARGUMENT

Counsel has been ineffective by allowing petitioner to agree to a plea that stipulated responsibilty for an amount of cocaine base (crack), far exceeding the amount involved in the charges brought against him in indictment.  Although the indictment remains defective, citing only the statutory language, the known amount of cocaine base involved in the charge is 8.8 grams.  An amount of cocaine (powder), and marijuana, 7.4 grams and 8.1 grams respectively added with the 8.8 grams of cocaine base, (equated to equal 177.48 kgs. of marijuana) would have placed petitioner at a base offense level of 26, without the excercising of any other reductions or enhancements.  All of the additional enhancements made to largen the petitioner's sentence would have to be construed as unlawful and unconstitutional in nature, in light of the Supreme Court's constitutional holding and interpretation in **APPRENDI v NEW JERSEY, (2000), 147 L. Ed 2d 435;**  The Due process clause of the Federal Constitution's Fourteenth Amendment requires that any fact that increases the penalty for a state crime beyond the prescribed statutory maximum-- other than prior conviction-- must be submitted

to a jury and proven beyond a reasonable doubt; this rule insures that a state is obliged to make its choices concerning the substantive content of the state's criminal laws with full awareness of the consequeces. The sentenced imposed upon the petitioner has in fact been imposed with disregard to the applicable statutory maximum. The amount of cocaine base (crack) that the petitioner pled guilty to was an amount that had not been charged in the indictment, nor had been presented to the federal grand jury. The plea itself has been attained unlawfully, in that the petitioner has a constitutional right to plea only to the amount by which he is charged.

Counsel's coercing of the petitioner to stipulate to an ounce or 28 grams of cocaine base (crack) in the plea, resulted in the constitutional violation being imposed upon the petitioner, barring an ability for the petitioner to make an intelligent plea.

This addition of cocaine base (crack) that the petitioner stipulated responsibility to, drastically altered the scope of the entire plea and increased the level of punishment unlawfully, by which the petitioner was exposed.

Prosecution does not have jurisdiction to prosecute a defendant and the District Court does not have jurisdiction to try, convict, or sentence a defendant for an offense other than the one charged in the indictment. Defendant cannot be held to answer for any offense not charged in an indictment returned by a grand jury. See **U.S. v TRAN, 234, F.3d 798 (2nd Cir. 2000).** The Supreme Court has characterized the indictment as jurisdictional in nature and scope, and that a drug amount is an essential element of an offense which must be cited in the indictment to sustain an attack to its validity.

See **STIRONE**, 361 U.S. at 218 80 S. CT. 270.

In **U.S. v TRAN**, **Supra**, the Grand Jury Clause of the United States Constitution provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury." (Amendment Five, United States Constitution). [T]o comfort with the Fifth and Sixth Amendments, a criminal indictment must (1) contain all of the elements of the offense so as to fairly inform the defendant of the charges against him, and (2) enable the defendant to plead double jeopardy in defense of future prosecutions for the same offense.

The Supreme Court has further held that enhancements must be charged in the indictment. See **JONES v UNITED STATES**, 526 U.S. 227 243 n.6, 119 S. CT. 1215, 143 L .ed 2d 311 (1999).

Drug amounts are not to be added or converted, in order to create a charge against a defendant, but are rather calculated through the sentencing guidelines to attain an offense level by which to sentence a defendant. In the present case the government made requirements stipulating to at least 28 grams of cocaine base, by which the petitioner was coerced to plea. Relating to **MEACHAM v UNITED STATES**, 626 F .2d 503, 509-510 (5th Cir. 1980).

In furtherance, pleading guilty does not waive a defendant's right to indictment by a grand jury and the objection that the indictment fails to charge an offense is not waived by a guilty plea; as held by the court in **U.S. v FERGUSON**, 758 F. 2d 843, 850-851 (2nd Cir. 1985).

The petitioner was charged with 8.8 grams of cocained base (crack), far less than the 28 grams (ounce) that he was coerced to

plead guilty to. Counsel failed to raise the cognizant issue that the district court lacked jurisdiction to convict the petitioner, for an offense not under the present indictment, and that the District court was not permitted to hold otherwise, according to the United States Constitution. As this was in effect judicial amendment of the grand jury's indictment, and a form of circumvention of the grand jury's intended presentment. The Supreme Court has held that this cannot be accomplished, even with the defendant's consent, as reviewed in **CROSBY v U.S.** , **339 F.2 at 744.**

Counsel has been ineffective because he has permitted the petitioner to be sentenced, through a plea agreement, construed with erroneous drug calculations; amounts of drugs that were unlawfully applied to the petitioner's offense level via uncollaborated, one witness testimony. The Supreme Court has held, that Federal District Court's erroneous sentencing determination unlawfully increased the defendant's prison sentence and established prejudice for purposes of a Sixth Amendment ineffective assistance of counsel claim in the case of **GLOVER v UNITED STATES** **531 U.S. 148 L. Ed 2d. 604, 121 S. CT.** The petitioner should have been sentenced for the precise amount of cocaine base (crack) that he was indicted for.

The agreement made by the defendant, to plea to at least 28 grams of cocaine base (crack) was made unintelligently by the petitioner, and while not being aware by his counsel, that he has a constitutional right to accept responsibility for only the amount of the substance by which he has been charged. In the case of **EX PARTE BAIN, AT 12-13, 7 S. CT. 781,** the Supreme Court has interpreted that; A prosecutor cannot make an end run around a jurisdiction prerequisite of an indictment by charging any federal

offense, and then proceeding to prosecute a defendant for a different albeit related crime.

Petitioner's claim that counsel failed to cross examine Stookey and other witnesses thoroughly has this support: (1) Defendant could challenge a drug quantity calculation based upon excludable material by §2255.   See **U.S. v SJEKOCHA** **114 F.3d 1085 (11th Cir. 1997).** (2) Although counsel did cross examine Stookey, he stopped short his cross examination when Stookey changed his story and said everytime we got down to a 1/2 ounce of crack we cooked an ounce of crack. Further cross would have shown the following:

A.    That neither the 3 ounces of crack, the 2 1/2 ounces of powder, or the 1 ounce of crack that Stookey alleged was cooked when we got down to $\frac{1}{2}$ ounce of crack ever existed.

B.    Stookey's first story of 3 ounces of crack and the 2 1/2 ounces of powder that was supposed to be thrown in a hole in the wall during the raid had failed him.   So he changed his story to saying every time we got down to a 1/2 ounce of crack we cooked an ounce of crack.   This alone shows his desparate story telling in an effort to cushion his own sentence.   If there were 3 ounces of crack in a hole in the wall, why then would there be a need to cook any?

Codefendants confession inculpating the accused inherently unreliable.   See **LEE v ILLINOIS** **476 U.S. 530,546, 106 S.Ct. 2056, 2065, 90 L.Ed 2d 514 (1986).**

A statement that is "inherently unreliable" cannot be rehabilitated. See **U.S. v PETTY** **982 F.2d 1365, 1373 (19th Cir. 1993).**

Co-conspirators statements, standing alone was insufficient to meet preponderance standard of co-conspirators exception to hearsay rul:   See **SEPULVEDA** **15 F.3d 1161 (1993),** Federal Rules. Evidence Rule 801 (d)(12)(E) 28 U.S.C.

The District Court could not rely upon the probation officer's estimate of drug quantities without corroborating evidence. See **U.S. v LEVAY** 76 F.3d 671 (5th Cir. 1996).

The Due Process Clause requires the application of clear and convincing evidence, where drug quantity is arrived at a manner that is inherently imprecise, the district court must consider the margin of error before finally fixing the amount, erring on the side of caution. See **U.S. v SCHEELE** 231 F.3d 492 (9th Cir. 2000).

C.    Had counsel furthered his cross examination, he would have exposed the personal use of Hibbetts, Stookey, Benner, and Whitby. See: **EXHIBIT B-2,** Benner's statement to Federal Agent, and Hibbett's **PSR, PAGE 18.** This would have confirmed that a large amount of crack and powder cocaine was being consumed for personal use, and not held for distribution. Also showing Stookey's statements of large profits to be bogus and unreliable. Counsel should have used testimony and reports from Benner and Whitby. See **U.S. v KIPP** 10 F.3d 1463 (9th Cir. 1993).

When comparing the present case to an observation made by the court in **WYSS,** the petitioner realizes that there did exist a good possibility for a decrease in the drug amounts charged to petitioner, had an argument been presented.   **WYSS,** contends that any amount of a drug bought and possessed to consume, rather than to sell, could not be counted as conduct relevant to the conviction for possession of that drug, with intention to distribute, and therefore could not be used as uncharged drug-related misconduct to enhance a sentence under the Sentencing Guidelines Comprehensive Drug Abuse Prevention and Control Act 1979 §401(a), 404, 21 U.S.C.A. §§1D1.3 (a)(2), 2D2.1, 3D1.2 (d) 18 U.S.C.A.   See **U.S. v WYSS** 147 F.3d 631 (7th Cir. 1998).

In a more recent case, the second circuit court has held that it is important to determine what amount, if any, were intended to be used for personal use. See **U.S. v WILLIAMS, 2001 W L 391985 2nd Cir, N.Y. 2001.** In this case there were four people using drugs.

Petitioner further contends that counsel has been ineffective for not informing him of the circumstances surrounding the 922(g) charge. Petitioner was led to believe that the plea stipulated to the 922(g) charge being consolidated with the 841(a)(1) charge, and to be ran concurrently, with the totality of that sentence being not to exceed 87 months. Which according to counsel, was the sentence to be imposed according to the sentencing guidelines.

Counsel's ineffectiveness resulted to the absence of an argument which should have been raised against the imposition of a sentence which was supposed to be concurrent, but actually is not. The Supreme Court ruled that the sentence has been imposed inconsistent with one concurrent, if in fact, the monetary assessment, as well as the prison term has been imposed on each of the multiple counts. Pursuant to 18 U.S.C. §3013, and the Courts holding in the aforementioned case, the sentences are not concurrent because the District Court's imposition of $100 assessment of each count made the accused's liability to pay total assessment dependant on the validity of each conviction. Petitioner has been committed to the U.S. Bureau of Prisons to be imprisoned for a term of 140 months on Count I and 120 months on count III, to run concurrently, but has been penalized with two (2) $100 assessment penaltiestotaling $200, which is not concurrent.

**WHEREFORE,** Harry M. Hibbetts, petitioner, pro se, hereby humbly prays, and respectfully requests that this Honorable Court further review this reply to the government's response, to petitioner's

(11)

initial §2255, act accordingly to grant petitioner appropriate relief and move to vacate, set aside, or correct petitioner's sentence, which has been unconstitutionally obtained, Pursuant to §2255.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this **6TH** day of **JULY**, 2001.

**RESPECTFULLY SUBMITTED,**

*Harry Michael Hibbetts*

**HARRY MICHAEL HIBBETTS,**
**PRO SE WITH ASSISTANCE**
**FEDERAL CORRECTION INSTITUTION**
**P.O. BOX 9000**
**FORREST CITY, AR.    72336**

(12)

## CERTIFICATE OF SERVICE

I, Harry Michael Hibbetts, hereby certify that I have provided

three (3) true and correct copies of the foregoing instrument, via

U.S. MAIL, to the following:

**K. TATE CHAMBERS**
**ASSISTANT UNITED STATES ATTORNEY**
**OFFICE OF THE UNITED STATES ATTORNEY**
**ONE TECHNOLOGY PLAZA-SUITE 400**
**PEORIA, ILLINOIS   61602**

**CLERK OF THE COURT   JOHN M. WATERS**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS AT PEORIA**
**100 N.E. MONROE STREET**
**PEORIA, ILLINOIS   61602**

On this ___6th___ day of July, ___2001___ .

_Harry Michael Hibbetts_
**HARRY MICHAEL HIBBETTS**
**REG. NO. 10955-026**
**FEDERAL CORRECTION INSTITUTION**
**P.O. BOX 9000**
**FORREST CITY, AR.   72336**

GOVERNMENT'S EXHIBI     3-22

FD-302a (Rev. 10-6-95)

245D-SI-46712

Continuation of FD-302 of ___TAMMI L. BENNER_____ , On 02/02/1998 , Page ___2___

On the occasions that BENNER was at 902 S. Greenlawn, she generally spent most of her time with HIBBETTS in his upstairs bedroom. There, they would smoke rock cocaine, which HIBBETTS provided. While in HIBBETTS bedroom, she saw various quantities of rock cocaine, which she felt was for personal use, and a silver colored handgun, possibly a 9mm semi-automatic. BENNER assumed the handgun belonged to HIBBETTS. On occasion, HARMS and WHITBY also joined BENNER and HIBBETTS in the bedroom, smoking rock cocaine and conversing.

BENNER felt that HIBBETTS attempted to expose her to as little of his and STOOKEY's rock cocaine sales operation, as possible. However, on approximately ten to twenty occasions, BENNER witnessed STOOKEY give HIBBETTS money which she assumed was garnered from the sale of rock cocaine. HIBBETTS, in return, gave STOOKEY what BENNER assumed was more rock cocaine to sell from the downstairs of the residence. These transactions occurred at the steel door, halfway up the staircase leading to the upstairs of the residence.

BENNER never discussed any of the sales transactions with HIBBETTS or STOOKEY, and has no idea as to how much money they were making in their operation. Both HIBBETTS and STOOKEY were smoking rock cocaine on a regular basis, which would have cut into their overall profits.

BENNER was intimidated by STOOKEY. On one occasion STOOKEY accused BENNER of stealing some rock cocaine, and placed his revolver to BENNER's head, threatening to shoot her if she did not confess to the theft. BENNER refused to do so, and STOOKEY then fired one shot into the sofa on which BENNER was seated. On another occasion, BENNER witnessed STOOKEY fire a shot at PAT THOMAS, who was at the residence to purchase rock cocaine.

Exhibit B-2

ß

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

FILED

AUG

JOHN M. _____ Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

HARRY MICHAEL HIBBETTS,          )
                                 )
            Petitioner,          )
                                 )
      v.                         )          Case No. 00-1207
                                 )
UNITED STATES OF AMERICA,        )
                                 )
            Respondent.          )

## O R D E R

This matter is now before the Court on Petitioner, Harry Michael Hibbetts'

("Hibbetts"), Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255. For

the reasons set forth below, Hibbetts' § 2255 Motion [1-1] is DENIED.

### BACKGROUND

On February 6, 1998, Hibbetts entered a plea of guilty to Possession of Cocaine

Base (Crack) with the Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), and

Possession of Firearms by a Felon in violation of 18 U.S.C. §'922(g). He was

subsequently sentenced to 140 months' imprisonment to be followed by 5 years of

supervised release for the possession of cocaine and 120 months' imprisonment to be

followed by 3 years of supervised release for the firearms charge. These sentences

were to be served concurrently. Although Hibbetts pled guilty, he reserved his right

to make a limited appeal.  See U.S. v. Hibbetts, 172 F.3d 54 (7th Cir. 1999)

(unpublished decision).

On appeal, Hibbetts argued that the evidence obtained pursuant to a "no-knock"

search warrant should have been suppressed because the Illinois Supreme Court later

found the statute authorizing such searches violated the Illinois Constitution. See id.;

see also, People v. Krueger, 675 N.E.2d 604, 609 (III. 1996) (Illinois Supreme Court case invalidating Illinois' no-knock statute, 725 ILCS 5/108-8). On January 10, 1996, the Peoria Police executed a search warrant that had been issued earlier in the day under the no-knock statute. The police obtained crack cocaine, cannabis, handguns and various amounts of currency from Hibbetts' apartment. Hibbetts sought to have the evidence suppressed. This Court denied the request, finding that although a no-knock warrant was not appropriate, a good faith exception applied and the officers could have relied on the warrant. The Court of Appeals affirmed this Court's decision.

On June 12, 2000, Hibbetts filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 alleging (1) that he received ineffective assistance of counsel and (2) that the indictment was constitutionally defective because it failed to allege drug weight. The matter is now fully brief and this Order follows.

## DISCUSSION

A defendant asserting a Sixth Amendment ineffective assistance of counsel claim must show that his counsel's performance was constitutionally deficient and that the deficiency prejudiced the outcome of the case. United States v. Gramley, 915 F.2d 1128, 1133 (7th Cir. 1990). The defendant has the burden of affirmatively identifying specific "acts or omissions" that can be deemed to have been outside the range of professionally competent assistance. Strickland v. Washington, 466 U.S. 668 (1984). After satisfying the Court that his counsel was deficient, the defendant must then "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

- 2 -

Hibbetts argues that his counsel was deficient in four ways: (1) his counsel failed to interview witnesses, (2) his counsel failed to cross-examine his co-defendant, Ronald Stookey, (3) his counsel failed to contest the enhancement for possession of a firearm, and (4) his counsel failed to challenge the search warrant.

In his first argument, Hibbetts contends that his counsel failed to interview witnesses; however, he fails to identify any of the witnesses his counsel could have interviewed. Hibbetts further fails to present this Court with any information these potential witnesses may have provided that would ultimately change his sentence. Accordingly, Hibbetts is unable to meet the requirements set for in Strickland and this Court summarily rejects this claim.

Next, Hibbetts contends that had his counsel effectively cross-examined his co-defendant, Ronald Stookey, he would have exposed inconsistencies in Stookey's statements at the sentencing hearing. Specifically, Hibbetts points to the inconsistency in Stookey's comments regarding the amount of cocaine that Hibbetts threw into holes in the wall during the police raid. Apparently, Hibbetts believes that Stookey lied to "cushion his own sentence." Hibbetts does not point to any specific question that his counsel could have asked or any action his counsel could have taken, but merely concludes that his counsel failed to properly cross-examine Stookey. A review of the transcript of the sentencing hearing reveals that his counsel asked numerous questions attacking the credibility of the Stookey. (See Transcript of Sentencing Hearing, June 26, 1998, pp. 29-50.) Moreover, the transcript reveals that his counsel asked a number of questions in an attempt to discredit the amount of drugs for which Hibbetts' co-defendant was claiming Hibbetts should have been held

- 3 -

accountable. Id. Hibbetts' claim that his counsel was inefficient cannot stand on bald, conclusory statements that his counsel should have done more.

Hibbetts' claim that his counsel was ineffective because he failed to contest the enhancement for possession of a firearm also fails. Hibbetts points to no authority that would allow his counsel to challenge the enhancement to his base offense level under the Sentencing Guidelines. In fact, such argument would be inappropriate because the Sentencing Guidelines do not prohibit the enhancement for a firearm on a drug conviction, and his counsel had no basis to challenge such enhancement. Accordingly, Hibbetts' claim that his counsel was ineffective for not challenging such enhancement cannot stand.

Hibbetts also challenges the effectiveness of his counsel in arguing his motion to suppress in this Court and on appeal. Hibbetts argues that his counsel should have brought to the Court that there was no affidavit attached to the warrant, which he purports was a violation of state law. Hibbetts' complaint regarding technical defects in the issuance of the warrant would not provide a valid basis to suppress the evidence found during the search. His counsel argued that the warrant was invalid because it was unconstitutional. This Court concluded that although a no-knock warrant was not appropriate, a good faith exception applied, and the officers could have relied on the warrant. Clearly, any technical defects would not invalidate the officers' reliance on the warrant. The record of this case indicates that Hibbetts' counsel vigorously challenged the evidence obtained during the search in this Court and on appeal. Hibbetts' complaint that this conduct was ineffective is clearly refuted by the record in this case.

- 4 -

Further, Hibbetts' argument that his counsel was ineffective for allowing him to be sentenced under an erroneous drug calculation cannot withstand judicial scrutiny. The transcript of the sentencing hearing reveals that Hibbetts' counsel adamantly challenged the amount of cocaine for consideration as relevant conduct. In fact, his counsel made the exact arguments Hibbetts now brings before this Court. (See Transcript of Sentencing Hearing, June 26, 1998, p. 12.) Accordingly, this Court cannot find that his counsel was ineffective.

Hibbetts also claims that his conviction is invalid because the indictment did not state a drug amount, relying on the recent Supreme Court decision in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000). However, Apprendi does not apply because the sentence the defendant received is under the statutory maximum. See United States v. Smith, 223 F.3d 554, 565-566 (7th Cir. 2000); United States v. Williams, 238 F.3d 871 (7th Cir. 2001). The maximum amount of imprisonment for Possession of Cocaine with Intent to Distribute under 21 U.S.C. § 841(b)(1)(C) where the drug weight is not an enhancement is 20 years. Hibbetts was sentenced to 140 months. Accordingly, Apprendi does not provide Hibbetts with a basis to challenge his sentence.

For the reasons set forth herein, Hibbetts' Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2255 [1-1] is DENIED. This matter is now terminated.

ENTERED this 30th day of August, 2001.

_S/ Michael M. Mihm_
Michael M. Mihm
United States District Judge

- 5 -

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court
## CENTRAL DISTRICT OF ILLINOIS

# JUDGMENT IN A CIVIL CASE

**FILED**

AUG 2 0 2001

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**HARRY MICHAEL HIBBETTS**

vs.

Case Number:  **00-1207**

**UNITED STATES OF AMERICA**

☒  **DECISION BY THE COURT.**  This action came to trial or hearing before the Court. **The** issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that petition for habeas corpus relief is denied. Case is terminated.

ENTER this 20th day of August, 2001

s/ John M. Waters
JOHN M. WATERS, CLERK

(s/C. Lambie
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 96-10024 |
| | ) |
| v. | ) IN VIO: Title 21, United States Code, |
| | ) Sections 841(a)(1) and 841(b)(1)(B), |
| HARRY M. HIBBETTS, | ) and 844, Title 18, United States Code, |
| | ) Sections 922(g) and 2 |
| Defendant. | ) |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT 1

On or about January 10, 1996 in Peoria County, within the Central District of Illinois, the

defendant herein,

### HARRY M. HIBBETTS,

did knowingly possess a mixture or substance containing cocaine and cocaine base (crack), a

Schedule II controlled substance, with intent to distribute.

In violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).

### COUNT 2

On or about January 10, 1996, in Peoria County, within the Central District of Illinois,

the defendant,

1



**HARRY HIBBETTS,**

did knowingly possess a mixture or substance containing cocaine base, a Schedule II controlled substance.

In violation of Title 21, United States Code 844.

## COUNT 3

On January 10, 1996, in Peoria County, in the Central District of Illinois, the defendant,

**HARRY HIBBETTS,**

did knowingly possess firearms which had previously traveled in interstate, to-wit:  a .380 caliber Femaru-Fegyuer-ESGEPGYAR semi-auto handgun and a .22 caliber EPMA semi-auto handgun, the defendant having been previously convicted under the laws of the States of Texas and Illinois of a crime punishable by imprisonment for a term exceeding one year.

In violation of Title 18, United States Code, Sections 922(g), and 2.

## COUNT 4

On or about January 26, 1996, in Peoria County, in the Central District of Illinois, the defendant,

**HARRY HIBBETTS,**

did knowingly possess firearms which had previously traveled in interstate, to-wit: two .22 caliber North American Arms derringers, the defendant having been previously convicted under the laws of the States of Texas and Illinois of a crime punishable by imprisonment for a term exceeding one year.

In violation of Title 18, United States Code, Sections 922(g), and 2.

2

## COUNT 5

On or about November 12, 1996, in Tazewell County, in the Central District of Illinois, the defendant,

### HARRY HIBBETTS,

did knowingly possess firearms which had previously traveled in interstate, to-wit: a 9MM Jennings Model 59 semi-automatic handgun and a Bryco Arms .380 caliber model 38 semi-automatic handgun, the defendant having been previously convicted under the laws of the States of Texas and Illinois of a crime punishable by imprisonment for a term exceeding one year.

In violation of Title 18, United States Code, Sections 922(g), and 2.

A True Bill,

_S/ Foreperson_
Foreperson

_S/ Frances C. Hulin_
FRANCES C. HULIN
UNITED STATES ATTORNEY

KTC

3

- App. 4 -